IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

RALPH W. PUCKETT, ET AL.                                              PLAINTIFFS

vs.                              CASE NO. **3:05CV267GH**

KENESAW LEASING, INC..                                                DEFENDANT

## **ORDER**

Plaintiffs filed this action in the Circuit Court of Crittenden County, Arkansas alleging that the arrest and prosecution of Ralph Puckett was without probable causes. Defendant Kenesaw Leasing, Inc. ("Kenesaw") removed the action on the basis of diversity jursidiction.  Kenesaw has filed two motions for summary judgment.  In the first it requests judgment on plaitniffs' claim for malicious prosecution.  In the second, it requests judgment on its counterclaim for breach of the lease agreement.

The facts,  according to the record, are as follows:[1]

On January 28, 2002, NKP Trucking, Inc., Ralph W. Puckett and Emma K. Puckett entered into a Lease Agreement  whereby the Pucketts signed as principals and personal guaranators of the lease of ten Kenworth dump trucks and two Dorsey dump trailers to to the company.  Paragraph 14 of the Lease Agreement requires that all leased equipment be returned to Kenesaw's Memphis facility upon the end of the lease.  The lease ran through July, 2005.

On December 2, 2002, Ralph Puckett called Wade West of Kenesaw and advised West that he could not continue payment under the lease.  West declared Puckett in default of the lease and so advised Puckett.  On or about December 4, 2002, West traveled to NKP's facility to discuss return of the leased equipment to Kenesaw's Memphis facility.  Based on his discussion with Puckett, West retained the services of

---

[1] Where material facts are disputed, the Court will so indicate.

-1-

Mark Harkness to pick up all of the leased equipment from NKP's yard in West Memphis and return it to Kenesaw's Memphis facility.

On December 7 and 8, 2002, Harkness and his assistant John Tatum moved a number of pieces of equipment to Memphis. Kenesaw states that three pieces of equipment under the lease were not found at the NKP facility. Puckett later told West where two pieces of equipment could be found. A missing tractor was found in Jonesboro and a missing trailer was found in the possession of Fowler Concrete in West Memphis.

The last piece of equipment, the Dorsey trailer, was not found. Plaintiffs contend that the Dorsey trailer was on the lot behind a locked gate at the time plaintiffs turned the only key to the gate over to Harkness. Plaintiffs state that they left, and upon their return, did not see the Dorsey trailer. Harkness claims that he saw the Dorsey trailer the first day he was on the lot. The next time he was on the lot, the gate was locked and the Dorsey trailer was no longer on the lot.

West states that he had several discussions with Puckett in a continuing effort to locate the missing trailer. Puckett states that he told Harkness that he didn't have the trailer and that he would help West and Harkness find the trailer. Puckett says he drove around looking for the trailer. Puckett told West and/or Harkness of several locations where the trailer might be. Wade and Harkness claim that they followed each of these "leads" in an effort to find the missing trailer, but that the trailer was not at any of the locations. Both West and Harkness asked Puckett to report the Dorsey trailer as stolen. Puckett would not do so but stated he would help find the trailer.

On March 14, 2003, West sought the advise of Sgt. Will Smith, a detective with the West Memphis Police Department, about what he viewed as plaintiffs' failure to return the leased Dorsey trailer. Sgt. Smith and his superior Lt. Ken Mitchell reviewed and concluded that Ark. Code Ann. § 5-36-115 was applicable.[2] Smith informed West that the

---

[2]Ark. Code Ann. § 5-36-115 provides as follows:

(a) Any person is guilty of theft and subject to the punishments prescribed by § 5-36-103 who shall intentionally, fraudulently, or by false pretense take, carry, lead, drive away, destroy, sell, secrete, convert, or appropriate in any wrongful manner any personal property

statute required the lessor, i.e., Kenesaw, to give five days' written notice to the lessee, i.e., the Pucketts, and the opportunity to return the leased equipment or pay for it.

On March 14, 2003, West sent five-day notice letters to the Pucketts, notifying each of them that they had five business days to return the missing trailer to Kenesaw or pay its value under the lease.[3]  Ralph Puckett received the letter. Emma Puckett did not

---

which is leased, rented, or entrusted to the person, or reports falsely of his wealth or mercantile credit and thereby fraudulently obtains possession of that personal property.

(b) The amount involved in the theft shall be deemed to be the highest value by any reasonable standard of the property or services which the person stole or attempted to steal.

(c) It shall be prima facie evidence of intent to commit theft when one who has leased or rented the personal property of another fails to return or make arrangements acceptable with the lessor to return the personal property to its owner within five (5) days, excluding Saturday, Sunday, or state or federal holidays, after proper notice following the expiration of the lease or rental agreement or presents identification to the lessor or renter thereof which is false, fictitious, or not current with respect to name, address, place of employment, or other appropriate items.

(d) Proper notice by the lessor shall consist of a written demand addressed and mailed by certified or registered mail to the lessee at the address given at the time of making the lease or rental agreement.

(e) The following factors shall constitute an affirmative defense to prosecution for theft:

(1) That the lessee accurately stated his name and address at the time of rental;

(2) That the lessee's failure to return the item at the expiration date of the rental contract was lawful;

(3) That the lessee failed to receive the lessor's notice personally unless notice was waived; and

(4) That the lessee returned the personal property to the owner or lessor within forty-eight (48) hours of the commencement of prosecution, together with any charges for the overdue period and the value of damages to the personal property, if any.

[3]The letter stated in relevant part:

We have exhibited enormous flexibility in our relationship with you and your company (NKP Trucking) over the last two years, including the recent orderly liquidation of the equipment under this defaulted lease.  However, in recent weeks, your cooperation and concern for the orderly surrender of the equipment under this lease has [sic] continually declined to the point of a complete disregard for our efforts.

claim her letter but was aware of it and discussed it with Ralph.

On April 8, 2003, West returned to the West Memphis Police Department and reported to Smith that he had not been contacted by either of the Pucketts. He gave Smith a copy of the five-day notice letter and the Pucketts' return receipts. Smith prepared an Affidavit for Warrant of Arrest of Ralph Puckett, and West signed it. The Affidavit for Warrant of Arrest stated the following:

> Pursuant to Rule 7.1 of the Arkansas Rule of Criminal Procedures[sic], the undersigned affiant(s) being duly sworn, deposes and says that he has reason to believe that the above-named person [Ralph William Puckett] committed the offense of: **(5-36-115) THEFT OF LEASED, RENTED OR ENTRUSTED PERSONAL PROPERTY (CLASS B FELONY)** on or about the **25th DAY OF MARCH, 2003.** Any person is guilty of theft who shall intentionally, fraudulently, or by false pretense take, carry, lead, drive away, destroy, sell, secrete, covert, or appropriate in any wrongful manner any personal property which is leased, rented, or entrusted to the person, or reports falsely of his wealth or mercantile credit and thereby fraudulently obtains possession of that personal property **(PROPERTY BEING A 1992 DORSEY 28 FOOT ALUMINUM DUMP TRAILER VALUED AT APPROXIMATELY $13,000.00)** in the City of West Memphis in Crittenden County, Arkansas, against the peace and dignity of the state of Arkansas.

Smith also prepared an NIBRS Incident Report Form.[4]

---

> We have recovered all of the equipment under the lease, at least that which is worth recovering, with the exception of the following trailer:
>
> **One(1) 1992 Dorsey 28" Aluminum End Dump; VIN # 1DTD18A28NP03410**
>
> Today, our flexibility ends and we have not [sic] choice but to issue the following ultimatum.
>
> You have five (5) business days to return the aforementioned trailer to a location of Kenesaw's choosing or make restitution of such equipment in the amount of $13,000 in certified funds. Failure to either return the equipment or make restitution within 5 days of your receipt of this letter constitutes evidence to commit theft, therefore, we will not hesitate to swear out a warrant for your arrest.
>
> West then quotes Ark. Code Ann. § 5-36-115(c) (*see supra*) and concludes the letter with the

following:
> Obviously, it is in your best interest to produce this trailer. I sincerely hope you take this letter and its demand seriously because I can assure you we certainly do.

[4]That form contained a narrative which stated the following:
The complainant stated suspect #1 [Ralph William Puckett] leased several dump trucks and dump trailers the first part of December 2002. The suspect then was

-4-

On April 14, 2003, the Pucketts' attorney, Gerald Coleman, sent a letter to West advising him that the Pucketts did not know where the trailer was. The letter to West stated the following:

> I represent Mr. Puckett. I am in receipt of your letter of March 14, 2003. As you well know, and as Mr. Puckett has informed you, your company came on his property and repossessed the equipment. The trailer in question was on the property when he allowed you to come on it. You, for reasons we do not understand, did not pick up the trailer immediately. He noticed the trailer was missing some days later, and assumed your company had picked it up. Mr. Puckett has no idea where this trailer is, and if it has been stolen from his property, he will be happy to assist you in filing a report. However, he does not have it.
>
> I read your recitation of Arkansas law. Please be advised that Arkansas law also allows civil damages against companies who swear out warrants, and have people falsely arrested.
>
> My client will be happy to assist you in any way possible to try and figure out what happened to the trailer. All he knows is that he thought you had it, and he knows he does not have it.

After West signed the Affidavit, Sgt. Smith took it and the other documentation to James C. Hale, Jr., the Deputy Prosecuting Attorney for Crittenden County, Arkansas. In particular, Smith provided Hale with the Affidavit for Warrant of Arrest, the lease documents, the five day notice letters, the notice form signed by West confirming that he had been advised of the penalties for filing a false report with the police and the NIBRS Incident Report Form. Hale stated that he believed that probable cause existed and that he made the decision that an arrest warrant could and should be issued for the arrest of Ralph Puckett. It is unclear whether that decision was made before Coleman's letter to West. There does not appear to be any evidence in the record that West provided a copy of Coleman's letter to either Smith or Hale.

Hale submitted the Affidavit for Arrest and the documentation he had to District

---

shutting down his business so the complainant attempted to get the property back and after some difficulty received all of the property back except the listed property. The complainant then mailed the suspect a certified letter giving him ten days to make arrangements to pay for the property or return the property but he did not do so. The complainant stated he would prosecute.

Judge Pal Rainey who reviewed it and executed the warrant on May 21, 2003.

West states that after he received the April 13th letter he attempted to contact Coleman's office without success. He sent a letter dated May 28, 2003, to Coleman which West contends sets forth a correct statement of the facts. According to West's rendition of the facts,

> On 12-9-02, eight of the nine trucks were recovered from Mr. Puckett's truck yard. . . . On that date, we contacted Mr. Puckett to inquire about the location of the two end dump trailers. It was then, that Mr. Puckett admitted that Fowler Concrete had one. . . .
>
> The trailer in question . . . was not on the yard and Mr. Puckett said he would locate it. We were unable to successfully contact Mr. Puckett for roughly 30 days after that in order to locate the end dump trailer.
>
> On February 7, 2003, we were able to contact Mr. Puckett. Mr. Puckett stated that the trailer may be in Black Rock, AR as he owed money to a contractor there, Aaron Trucking. Attempts to locate the trailer there were unsuccessful. Again, we contacted Mr. Puckett and informed him that we have not found the trailer. Again, he stated that he would locate it.
>
> Over the course of the following 30 days, we attempted to contact Mr. Puckett and were unsuccessful as all addresses and phone numbers were no longer valid. At no time, to[sic] Mr. Puckett make any real effort to assist us and at no time did he report the trailer stolen. Mr. Puckett has known from the date of our initial repossession, 12-9-02, that we did not have the 1992 Dorsey 28' Aluminum Trailer and further, that we were actively searching for it. Still, his efforts to assist us were nonexistent.
>
> As of 4-15-03, through the help of the West Memphis Police Dept., we learned that the trailer was currently registered to an individual in Hamburg, AR who has been deceased for 5 years. A local detective in Hamburg followed up with the family of the deceased and he was unsuccessful in locating the trailer.
>
> Our only desire is to find our trailer and we very much would like to talk with Mr. Puckett to ascertain any information that would help us in doing so. We believe that he may have some knowledge of the individuals or parties in Hamburg that may have the trailer or other information that may prove helpful in the recovery of the trailer.
>
> As Mr. Puckett can attest, we have been enormously flexible in our relationship with him and his company (NKP Trucking) over the last two years. You may note, we have not filed suit against him though we are certainly within our right to do so. Civil litigation will not in any way cure our loss; it will only add expense and time to an already unfortunate situation.
>
> We earnestly would like to talk and/or meet with Mr. Puckett to discuss any information that he may have as to the whereabouts of this trailer. Any assistance that you could provide would be greatly appreciated. I look

forward to hearing from you within five (5) business days with some meaningful information, otherwise, we will have no other choice but to believe something is afoul and proceed accordingly.

Coleman, by letter dated June 11, 2003, acknowledged that he had received West's May 28th letter and had forwarded it to the Pucketts. Coleman stated that he was awaiting a response from the Pucketts. West stated that he never heard anything further from the Pucketts or their attorney.

In October, 2004, Ralph Puckett was arrested on the outstanding warrant. The charges were later *nolle prossed* by another deputy prosecutor. Plaintiffs filed this complaint for malicious prosecution on October 19, 2005.

In order to establish a claim for malicious prosecution, plaintiffs must prove the following five elements: (1) a proceeding instituted or continued by the Kenesaw against plaintiff; (2) termination of the proceeding in favor of plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the Kenesaw; and (5) damages. *Sundeen v. Kroger,* 355 Ark. 138, 142 (2003). "[T]he existence of probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal proceedings. Probable cause for prosecution must be based upon the existence of facts or credible information that would induce a person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged." *Id.* (citations omitted).

Kenesaw asserts that acting on advise of counsel is a defense to a claim of malicious prosecution. According to Arkansas law, "where one lays all the facts in his possession before the public prosecutor, or before counsel learned in the law, and acts upon the advice of such counsel in instituting a prosecution, this is conclusive of the existence of probable cause, and is a complete defense in an action for malicious prosecution." *Machen Ford-Lincoln-Mercury, Inc. v. Michaelis,* 284 Ark. 255, 257 (Ark. 1984)(citation omitted)

Here, West presented all the facts in his possession at the time to Smith, who

subsequently presented them to Hale.  Although plaintiffs, through their counsel, had sent a letter after the five days,  plaintiffs took no further action to assist West in locating the trailer or clarifying the issue of the registered trailer, even in light of information that the trailer had been registered to a deceased person.   The facts as they existed and as presented to the prosecutor were:  Puckett leased the equipment, he failed to return the equipment upon default, he received the statutory five-day notice and he did not return the equipment or make alternate arrangements as required by the statute after receipt of the notice.  These were sufficient to establish probable cause for issuance of the warrant. Indeed, under Arkansas law, the failure to return the property or make arrangements for such within five days receipt of the notice is prima facie evidence of intent to commit theft. Ark. Code Ann. § 5-36-115(c).

Furthermore,  plaintiffs have presented no evidence of malice on the part of Kenesaw.   Malice is "any improper or sinister motive for instituting the suit."  *Milton Hambrice, Inc. v. State Farm Fire & Cas. Co.*, 114 F.3d 722, 725 (8th Cir. 1997) (citations and internal quotation omitted).   The evidence reveals that representatives of Kenesaw attempted to work with plaintiffs to locate the trailer.  Only after a number of unsuccessful attempts to locate the trailer and plaintiffs' lack of cooperation in either finding the trailer or reporting it as stolen or missing did West seek assistance from the police department. West carefully followed the advise of Smith and relied on the decision of Hale.

In sum, the Court finds that Kenesaw is entitled to summary judgment on plaintiffs' malicious prosecution claim.  Kenesaw's reliance on the advise of counsel is a complete defense.  Furthermore, there was sufficient probable cause for the issuance of an arrest warrant and; plaintiffs have failed to provide evidence of malice.

Kenesaw has also filed a motion for summary judgment on its counterclaim for plaintiffs' breach of the lease agreement.  There is no dispute that plaintiffs each personally guaranteed the lease agreement payment obligations.  There is also no dispute that plaintiffs failed to keep the equipment insured against casualty and theft, as required by the

lease. There is also no dispute that Kenesaw suffered substantial monetary loss as a result of the damaged tractor found at the NKP lot which was sold for salvage, the damaged T-300 tractor whose engine was replaced, and the damaged trailer found at Fowler Concrete and sold for salvage. While plaintiffs assumed that Kenesaw had the Dorsey trailer picked up, they do not dispute Kenesaw's assertions that the trailer was never found and that Kenesaw suffered a loss as a result.

The Lease Agreement provided that plaintiffs shall assume all risk or loss or damage to the property whether or not such loss or damage is covered by insurance on the equipment. The Lease Agreement further provided that in the event of default, the Lessor (Kenesaw) had the option to

> (a) declare the remaining unpaid installments of rent at once due and payable, or (b) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee, and subsequently sue for damages suffered from the breach by Lessee . . . or (c) terminate this Lease and, with or without legal process, enter in or upon Lessee's premises and remove said property with or without notice to Lessee and sell or lease the property at such price as Lessor determines is reasonable and apply the proceeds of the sale or lease first to the expenses of the sale or lease, including reasonable attorney's fees, and second to the total unpaid rental due for the term of this Lease and Lessee shall pay Lessor any deficiency . . .

The total amount, for the entire term of the lease, due by plaintiffs, as guarantors of the lease, at the time the lease was executed was $756,000.00. The total amount due and payable by plaintiffs at the time they were placed in default in December of 2002 was $711,381.00 as plaitniffs had paid only $44,619.00 toward their lease obligation.

Kenesaw elected to sell and/or re-lease the individual pieces of equipment to third parties after plaintiffs' default, and credited the amount recovered to plaintiffs' account. The total amount recovered by Kenesaw was $608,470.10, and therefore the net balance due after giving all credits is $111,310.90.

In support of its assertion that the amount of the credits given to plaintiffs is fair and reasonable, Kenesaw has provided the affidavit of John Bond, an expert in the valuation of used Kenworth equipment. He states that the amounts credited to the plaintiffs' account

for each unit was far in excess of the NADA book value, and the value that he placed on the equipment as of January, 2003. The amount Kenesaw credited was about 87% of the original purchase price which included the federal excise tax. One truck, which was so damaged that it could not be put back in service, was sold for scap and plaintiffs were credited the amount received for the scrap.

Plaintiffs have not provided any evidence to dispute that submitted by Kenesaw. At the most they claim that the value of $13,000.00 for the Dorsey trailer that was not found is too high. That is really a non-issue as Kenesaw did not give any credit for the Dorsey trailer. The credits were only for the vehicles recovered. Indeed, had plaintiffs maintained insurance on the Dorsey trailer or had the Dorsey trailer been recovered, plaintiffs would undoubtedly be arguing that they should receive the entire $13,000.00 credit even though the trailer was over ten years old at the time of the default.   They do not dispute that the credits they did receive were fair and reasonable.

Based on the undisputed evidence, the Court finds that the credits are fair and reasonable and that Kenesaw is entitled to judgment on its counterclaim.

Kenesaw also asserts that it is entitled to attorney's fees under the Lease Agreement and under Ark. Code Ann. § 16-22-308 both of which provide for a reasonable attorney's fee in an action such as this.[5] Kenesaw requests that a reasonable attorney's fee be the greater of either $37,103.63, i.e. one-third the amount of the damages, or its actual attorney's fee

---

[5]
Paragraph 17 of the Lease provides that "[i]n the event of any action at law or suit in equity in relation to this Lease, Lessee, in addition to all other sums which Lessee may be called upon to pay, will pay to Lessor a reasonable sum for its attorney's fees."

Ark. Code Ann. § 16-22-308 provides:
In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.

incurred in not only pursuing this claim but in defending the claim brought by plaintiffs.

The Court finds that Kenesaw is entitled to a reasonable attorney's fee which is limited to the amount actually incurred in pursuing its counterclaim. Kenesaw should submit an itemization of the hours expended and counsel's hourly rate as well as expenses incurred within ten days of the entry of this order.

Accordingly, Kenesaw's first motion for summary judgment is granted; Kenesaw's Kenesaw's second motion for summary judgment is granted as set forth above and judgment will be entered in favor of Kenesaw on its counterclaim in the amount of $111,310.90 along with reasonable attorney's fees. Kenesaw's motion to compel is denied as moot.

IT IS SO ORDERED this 3rd day of August, 2006.

*George Howard, Jr.*

_____
UNITED STATES DISTRICT JUDGE